UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNELLYCIS DE JESUS ALBORNOZ
LIRA,

                       Petitioner,

    v.

LAURA HERMOSILLO et al.,

                       Respondents.

CASE NO. 2:25-cv-02713-LK

ORDER GRANTING IN PART
AND DENYING IN PART
AMENDED PETITION FOR WRIT
OF HABEAS CORPUS

This matter comes before the Court on Petitioner Annellycis De Jesus Albornoz Lira's Amended Petition for Writ of Habeas Corpus. Dkt. No. 12. For the reasons stated below, the Court grants the petition in part and denies it in part.[1]

## I.   BACKGROUND

Albornoz is a citizen of Venezuela who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* at 5. In March 2024, she arrived at a

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 1

United States port of entry for an appointment booked through the CBP One mobile application without valid entry or travel documents. Dkt. No. 17 at 1–2. U.S. Customs and Border Protection ("CBP") issued her a notice to appear that charged her as removable as an arriving alien under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* at 2; Dkt. No. 18-1 at 2 (Notice to Appear). Albornoz was granted humanitarian parole under Section § 212(d)(5) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(d)(5)) for up to two years, and she was given a future date to appear in immigration court in Florida. Dkt. No. 12 at 6; Dkt. No. 17 at 2. The next month, she moved to Washington. Dkt. No. 12 at 6–7. She avers that she applied for asylum in August 2025. Dkt. No. 14 at 3.

According to Albornoz, once she moved to Washington, she voluntarily enrolled in U.S. Immigration and Customs Enforcement ("ICE")'s Intensive Supervision Appearance Program ("ISAP") because she "wanted to do everything right." Dkt. No. 12 at 6 (quoting Dkt. No. 14 at 2). Albornoz avers that she complied with all of her ISAP requirements, and was surprised when she was told to report to the Richland, Washington ICE office on September 30, 2025. Dkt. No. 14 at 3. When she did so, she was transported to the ICE office in Yakima "so ICE could take a look at her case," and then to the NWIPC, where she remains detained. Dkt. No. 12 at 7; *see also* Dkt. No. 14 at 4.

Respondents[2] tell a different story. They contend that after Albornoz moved to Washington, ICE enrolled her in the Alternatives to Detention ("ATD") program in January 2025,[3]

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] One of the alternatives in the ATD program is ISAP, a program that "determines how much supervision is necessary on a person-by-person basis." ICE Portal, Alternatives to Detention (ATD), *available at* https://portal.ice.gov/immigration-guide/atd (last visited Feb. 14, 2026).

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 2

and she "failed to complete required ATD biometric check-ins in April, May, and June 2025," Dkt. No. 16 at 2 (citing Dkt. No. 17 at 2). She was arrested in September 2025 for these ATD violations. Dkt. No. 16 at 2 (citing Dkt. No. 17 at 2; Dkt. No. 18-3 at 2 (warrant for arrest); Dkt. No. 18-4 at 3 (Form I-213)).[4]

Removal proceedings ensued. Dkt. No. 16 at 3. Albornoz attended a master calendar hearing on October 29, 2025. Dkt. No. 14 at 4. On November 3, 2025, an immigration judge denied bond, finding that Albornoz is subject to mandatory detention as an arriving alien under 8 U.S.C. § 1225(b). Dkt. No. 17 at 3; Dkt. No. 18-5 at 2–3 (Order of the Immigration Judge).

On November 14, 2025, Albornoz appeared before an immigration judge for a final merits hearing. Dkt. No. 17 at 3. After taking evidence and testimony, the immigration judge denied Albornoz's application for asylum and other relief and ordered her removed to Venezuela, or in the alternative, to Brazil. *Id.*; Dkt. No. 18-6 at 2–5. With the help of an attorney, Albornoz appealed the denial of her asylum application, and her appeal remains pending. Dkt. No. 14 at 5.

Albornoz next filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Washington, which transferred the petition to this district. Dkt. Nos. 1, 3. Counsel then appeared on Albornoz's behalf and filed an amended petition for habeas corpus. Dkt. Nos. 8, 12. Albornoz alleges a violation of her Fifth Amendment right to due process, and seeks (1) immediate release; (2) an order preventing Respondents from re-detaining her "during the pendency of her removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [she] is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks"; (3) an order that Respondents must return her personal property; (4) a declaration that her re-

---

[4] As Albornoz points out, Respondents "have not submitted any primary records showing the claimed ATD violations that allegedly occurred in April, May, and June 2025." Dkt. No. 19 at 6 n.2.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 3

detention while removal proceedings are ongoing "without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment," and (5) attorney's fees and costs under the Equal Access to Justice Act. Dkt. No. 12 at 12–13.

## II.    DISCUSSION

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 4

proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      Albornoz has Established a Due Process Violation**

1.   Applicability of the Due Process Clause

Like many petitions before the Court, Albornoz's petition ignores the statute to which she is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See, e.g.*, Dkt. No. 12 at 9–12; Dkt. No. 19 at 3–4. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place[.]" *Id.*; *see also id.* at 1203 (Because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions]

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 5

mandate[d] the same procedural relief in this case"); *Demore*, 538 U.S. at 529 n.11 (in response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," pointing to *Zadvydas*, in which the Supreme Court "permit[ed] [noncitizens] to be detained for several months prior to such a hearing").

As discussed above, the statutory provision applicable here is Section 1225(b). For the reasons set forth in the Court's order in *Dieng v. Hermosillo*, 2:26-cv-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026), the Court finds that the Due Process Clause is applicable in this case and adopts the analysis from that order. The Court also reiterates that humanitarian parole under Section 1225(b) can establish the same kinds of liberty interests described in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Here, Albornoz has established such an interest: in the year and a half that she has spent in the United States, she "built a supportive community, began working with employment authorization, and went to church." Dkt. No. 12 at 7; *see also* Dkt. No. 14 at 3.

As noted above, Albornoz does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1225(b), and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *7 (E.D. Cal. Nov. 25, 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)), the Court addresses the process required here.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 6

2.  The Process Required

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole automatically terminates if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized," and "no written notice shall be required" for automatic termination. 8 C.F.R. § 212.5(e)(1). Otherwise, for parole to be terminated, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Once a noncitizen's parole has terminated—either automatically or on notice—"any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1) ("[T]he [noncitizen] shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 7

authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

       3.   <u>Albornoz has Shown that the Government Failed to Follow the Required Process</u>

Albornoz asserts that "Respondents revoked [her] release and deprived her of liberty without providing written notice and a meaningful opportunity to be heard by a neutral decisionmaker prior to her re-detention" in violation of the Due Process Clause of the Fifth Amendment. Specifically, she states that prior to her re-detention, Respondents "did not provide any written notice explaining the basis for the revocation of her release[]," "did not assess whether [she] presented a flight risk or danger to the community," and did not "provide a hearing before a neutral decisionmaker[.]" Dkt. No. 12 at 2; *see also* Dkt. No. 14 at 4 (Albornoz declaration attesting that at the time she was re-detained, the government did not notify her that her parole was being revoked or why).

Respondents answer that Albornoz "is an arriving alien subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)." Dkt. No. 16 at 4 (citing 8 C.F.R. §§ 1.2, 235.3(c)); *see also id.* at 3 (stating that "[b]ecause the removal order is not administratively final, [Albornoz] remains detained pursuant to 8 U.S.C. § 1225(b)(1) as an arriving alien"). However, it is undisputed that Albornoz's two-year period of parole had not been revoked prior to her arrest, *see* Dkt. No. 18-2 at 2 (granting parole until March 17, 2026), and Respondents do not contest Albornoz's allegations that they did not provide her with written notice explaining the basis for the revocation of her parole before arresting her. *See generally* Dkt. No. 16. Indeed, Respondents have offered no evidence that they provided Albornoz with the written notice required by 8 C.F.R. § 212.5(e)(2)(i), even to this date. Respondents also have put forth no evidence that "the purpose for which parole was authorized" has been accomplished or that a relevant official opined that "neither humanitarian reasons nor public benefit warrants the continued presence" of Albornoz in the United States. *See*

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 8

*generally* Dkt. Nos. 16–18. To the contrary, Respondents only aver that Albornoz was taken into custody because "ERO had reviewed [her] case and determined she was amenable to arrest based on multiple ATD violations." Dkt. No. 17 at 2; *see also* Dkt. No. 16 at 8 (arguing that Albornoz's ATD violations "provided ICE with a basis to arrest her without notice"). Thus, the Court concludes that the manner in which the government revoked Flores Torres's parole violated 8 C.F.R. § 212.5(e)(2)(i) and failed to comport with the process due to her. *See Torres v. Noem*, No. C25-2697JLR, 2026 WL 234076, at *4 (W.D. Wash. Jan. 29, 2026) (finding that by revoking the petitioner's parole without following the regulatory and statutory requirements, "DHS failed to provide [petitioner] with the minimum process due"); *Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[ ] . . . Petitioner's detention[ ] is unlawful.").

    4.  <u>*Mathews* Analysis</u>

Because the parties agree that the standard laid out in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) applies here, and for the reasons this Court previously explained in *Flores Torres*, 2026 WL 145715 regarding the due process implications of the revocation of parole, the Court proceeds to apply the *Mathews* factors.

Under *Matthews*, Courts analyze three factors to determine whether an administrative procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, it is undisputed that Albornoz has a liberty interest in being free from imprisonment. *Zadvydas*, 533 U.S. at 690. Her liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process," *Morrissey*, 408 U.S. at 482, as provided under 8 C.F.R. § 212.5(e)(2). A "petitioner's liberty interest [does] not expire along with h[er] parole." *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (citation modified). This factor weighs in Albornoz's favor.

Turning to the second factor, for the reasons stated in this Court's order in *Dieng*, due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) Albornoz be given "the opportunity to be heard" with respect to the government's basis for re-detention under the applicable statutory and regulatory framework "at a meaningful time and in a meaningful manner." 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) (citation modified). Here, as discussed above, the government did not follow the procedures required by its own regulations in revoking Albornoz's parole. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained.[5] "[T]he additional procedural

[5] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where "ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 10

safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025). This factor favors Albornoz.

With respect to the last factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *Id.* (citation modified). Therefore, this factor too weighs in favor of Albornoz.

Under *Matthews*, the Court finds that Respondents failed to provide Albornoz with the procedures due to her under the Due Process Clause, and accordingly, her detention is unlawful.

**C.      The Court Denies Albornoz's Request Preventing Re-Detention**

Albornoz requests an order "permanently enjoining h[er] re-detention during the pendency of her removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that she is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 12 at 13.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a

petitioner to file a habeas petition to obtain relief, and [it] has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[T]he risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard"); *Munoz Materano v. Arteta*, No. 25-CV-6137-ER, 2025 WL 2630826, at *14 (S.D.N.Y. Sept. 12, 2025) (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor d[id] they articulate . . . either that the purpose for which [Petitioner's] parole was authorized ha[d] been accomplished, []or that neither humanitarian reasons nor public benefit warrant[ed] his continued presence in the United States.").

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 11

permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Nowhere in Albornoz's petition does she allege that re-detention is likely, or that such detention is likely to occur without proper notice and an opportunity to be heard. Without argument or evidence that unlawful re-detention is likely to occur, Albornoz's request constitutes nothing more than a "mere possibility" that does not entitle her to relief. *Id.* (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, her request for injunctive relief preventing her re-detention is denied.

### III.  CONCLUSION

For the reasons stated above, the amended petition writ of habeas corpus, Dkt. No. 12, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall immediately release Albornoz from custody subject to the conditions of her most recent parole agreement and return her personal property to her;

2. The parties shall file a Joint Status Report by February 18, 2026, confirming that Albornoz has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 12

prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 17th day of February, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 13